UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE,<br><br>          Plaintiff<br><br>    v.<br><br>TRUSTEES OF BOSTON COLLEGE,<br><br>          Defendant | Civil Action No: 1:19-cv-11626-DPW<br>**\*SEALED\*** |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## FOR A TEMPORARY RESTRAINING ORDER

Defendant Trustees of Boston College ("BC") submits this opposition to Plaintiff's

Motion for a Temporary Restraining Oder and a Preliminary Injunction and Request for

Expedited Consideration.

### ARGUMENT

## I.   DOE SEEKS MANDATORY RELIEF, WHICH IS STRONGLY DISFAVORED.

Preliminary injunctive relief typically is allowed only to preserve the status quo, i.e., to

enjoin the non-moving party from taking some action. *See Braintree Lab's, Inc. v. Citigroup*

*Glob. Markets Inc.*, 622 F.3d 36, 41 (1st Cir. 2010); *Bercovitch v. Baldwin School, Inc.,* 133 F.3d

141, 151 (1st Cir. 1998); *Keogh v. Field & Sons HVAC, Inc.*, No. CV 12-10203-MLW, 2012 WL

12884870, at \*1 (D. Mass. June 25, 2012).  Mandatory injunctions, which alter the status quo,

are disfavored. *See L.L. Bean, Inc. v. Bank of Am.*, 630 F. Supp. 2d 83, 89 (D. Me. 2009)

(collecting cases); *see also Lu v. Hulme*, No. CA 12-11117-MLW, 2013 WL 1331028, at \*10 (D.

Mass. Mar. 30, 2013).  A party seeking mandatory injunctive relief must meet an "elevated"

burden, demonstrating that "the exigencies of the situation demand such relief." *Braintree Labs.*,

662 F.3d at 41; *see also Mass. Coal. of Citizens with Disabilities v. Civil Defense Agency,* 649

F.2d 71, 76 n.7 (1st Cir. 1981)); *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 33 (1st Cir. 1990).  A

"mandatory injunction should not issue unless the facts and the law clearly favor the moving party." *Robinson v. Wall*, C.A. 09-277-S, 2013 WL 4039027, at *2 (D.R.I. Aug. 7, 2013); *see also Strahan v. Roughead*, 08-CV-10919-MLW, 2010 WL 4827880, at *10 (D. Mass. Nov. 22, 2010); *L.L. Bean*, 630 F. Supp. 2d at 89.

The status quo is that Doe was found responsible for sexual misconduct and sanctioned with a suspension for one year. Doe appealed, challenging the finding of responsibility. It was at that point, after the finding had been made and the sanction decided, that the "dispute" between the parties arose. The appeal was denied. Thus, all of the relief that Doe seeks is mandatory injunctive relief, which would alter the status quo. Doe does not seek to enjoin BC from finding him responsible or from suspending him, which already have occurred. Instead he seeks to force BC to take affirmative action – essentially vacating the suspension, allowing him to return to classes and ████████████████, until this case is decided on the merits. There are no special "exigencies" that favor the granting of such extraordinary relief, nor does "the law clearly favor the moving party," for the reasons that follow.

## II.    DOE HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.    Doe is Not Likely to Succeed on His Contract Claim.

A college has a contractual obligation to substantially follow its conduct policies and procedures as it would reasonably expect a student to understand them; to conduct its procedures with "basic fairness," which means providing the student with notice of the charge against him and a meaningful opportunity to respond; and to reach a decision that has some rational basis, i.e., one that is not arbitrary and capricious. *See Walker v. Pres. & Fellows of Harvard Coll.*, 840 F.3d 57, 62 (1st Cir. 2016); *Cloud v. Trs. of Bos. Univ.*, 720 F.2d 721, 724 (1st Cir. 1983); *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478, 735 N.E.2d 373, 378 (2000); *Coveney v. Pres. &*

2

*Trs. of Holy Cross Coll.*, 388 Mass. 16, 19, 445 N.E.2d 136, 138-39 (1983); s*ee also Doe v. Trs. of Bos. Coll.*, 892 F.3d at 88 (obligation of fundamental fairness in student conduct proceedings is defined by the parties' contractual relationship). Where, as in this case, the disciplinary process meets that test, the outcome is not subject to judicial challenge.

Doe alleges that BC breached its contract with him and the implied covenant of good faith and fair dealing, and denied him a fair process because: (1) he did not receive proper notice of the charges; (2) he was unable to conduct live cross examination of his accuser or the witnesses; (3) he did not have an opportunity to access all the evidence until after his interviews; (4) he did not have an effective appeal; (5) BC failed to have an independent process by combining the roles of investigator and adjudicator; (6) the investigation was not thorough or impartial; (7) the investigators applied the incorrect standard of review; (8) BC allowed Roe to violate confidentiality; (9) BC breached its obligation to presume Doe was innocent; and (10) BC failed to complete the investigation within 60 days. None of these allegations support a claim for breach of contract, violation of basic fairness, or breach of the covenant of good faith and fair dealing.

The Court's review is limited to BC's compliance with its policies; it does not second-guess them. Relying on *Doe v. Brandeis*, 177 F. Supp. 3d 561, 601 (D. Mass. 2016), Doe couches some of his contract claims as violations of basic fairness. Pl. Mem at 19. Doe argues that the obligation to provide "basic fairness" invites judicial consideration of whether BC's policies, as implemented, afforded Doe both "procedural fairness" and "substantive fairness." That is not correct. Two years after the District Court's decision in *Brandeis*, the First Circuit ruled that where, as in this case, a university's procedures contain an explicit promise of "fundamental fairness," any implied promise of "basic fairness ... becomes superfluous and the

3

court's [determination whether] the disciplinary proceedings were 'conducted with basic fairness'… focuses on assuring compliance with the express contractual promise." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 88 (1st Cir. 2018). Thus, the university's obligation to provide "due process and fundamental fairness" is satisfied as long as the university complies with its procedures and those procedures afford the student notice of the charges against him, the opportunity to present evidence including witnesses in his defense, and the opportunity to be advised by counsel during the process – giving no regard to arguments that different or additional procedures were needed to afford "basic fairness." *See id.* at 83, 88.[1]

### 1.    Doe was not entitled to cross-examine Roe.

BC's Sexual Misconduct Policy does not provide for the cross-examination of accusers. Pl. Ex. A. Moreover, private colleges such as BC are not required to provide constitutional due process prior to imposing student discipline. *See Bleiler v. Coll. of Holy Cross*, No. 11–CV–11541–DJC, 2013 WL 4714340, at *4 (D. Mass. Aug. 26, 2013); *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 462 (S.D.N.Y. 2015) *see also Schaer v. Brandeis Univ.*, 432 Mass. 474, 482, 735 N.E.2d 373, 381 (2000); *Coveney v. Pres. & Trs. of Coll. of Holy Cross*, 388 Mass. 16, 21, 445 N.E.2d 136, 140 (1983). The First Circuit has held that even a public institution, to which due process principles do apply, need not conduct a hearing which involves the right to confront or cross-examine witnesses. *Gorman v. Univ. of R.I.*, 837 F.2d 7, 16 (1st Cir. 1988); *see also Haidak v. Univ. of Mass. at Amherst*, 299 F. Supp. 3d 242 (D. Mass. 2018).

Doe's reliance on cases from the Sixth Circuit is misplaced. Those cases are grounded in principles of constitutional due process applicable to public institutions, not private institutions

---

[1] Thus, for example, the First Circuit in *Boston College* summarily rejected the student's argument that a Hearing Board lacked "investigatory training," because the university's policies did not require it, *id.* at 82, as well as the student's claim that the hearing date was unfair, because "the Student Guide's language [about the scheduling of hearings] is dispositive." *Id.*

such as BC.  *See Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 894 (M.D. Tenn. 2018)*; accord Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 698 (M.D. Tenn. 2018) *appeal dismissed*, No. 19-5061, 2019 WL 3202209 (6th Cir. Apr. 26, 2019); *Yu,* 97 F. Supp. 3d at 462.

Doe's reliance on *Doe v. Brandeis, supra,* is also misplaced.  Doe's argument that the Court in *Brandeis* deemed the single-investigator model "unfair" fails in light of *Boston College*, for the reasons set forth above, and *Brandeis* is easily distinguished in any event.  The Court in *Brandeis* did not rule that a single-investigator model is unfair *per se*; rather, it found that having a single investigator was one factor to consider in evaluating the plaintiff's basic fairness claim, which also rested on allegations that the plaintiff had insufficient notice of the numerous allegations against him, was prevented from providing witnesses and evidence in his defense, and was denied the assistance of an attorney.  None of those essential facts is present here.

The process that Doe was afforded provided him with a fair substitute for cross-examination in any event.  Doe was afforded several long interviews with the investigator, which allowed him to tell his side of the story and respond to the allegations of the complainant.  Prior to the investigator's finding of responsibility, Doe was provided with all of the evidence, including summaries of the witness interviews.  With the assistance of counsel, Doe was able to comment on the evidence and point to any inconsistences or gaps in the evidence that he perceived.  This also gave him the opportunity to propose additional questions or areas of inquiry for the investigators to pursue. That the investigators did not deem additional information material to the outcome, or did not give any additional information the weight Doe would have preferred, is not actionable. *See Doe v. Univ. of Dayton,* 766 F. App'x 275, 288 (6th Cir. 2019); *Haidak v. Univ. of Mass. at Amherst*, 299 F. Supp. 3d at 266 (hearing panel asked some but not all questions the respondent submitted).

### 2.     BC provided adequate notice to Doe.

Doe argues that he was not provided with adequate notice of the charges against him.   Pl.

Mem at 20.  He claims that the notice failed to include specific allegations sufficient for him to

defend himself because it focused on Roe's intoxication and potential incapacitation.  *Id.*  The

actual notice undercuts his claim completely.  It provides the details of the allegation – that Doe

engaged in "non-consensual sexual contact through kissing and touching of intimate body parts

and penetrating [Roe's] vagina with [his] penis without [Roe's] consent while [she] was

incapacitated. . . ." Pl. Ex. C.  The notice informed Doe that the allegation was that his sexual

contact with Roe was not consensual; it was *not* limited to the allegation that consent was absent

solely because Roe allegedly was incapacitated.  As correctly noted in the appeal decision, the

notice "did not say that [incapacitation] was the only possible basis for a finding"; the notice

letter said "that [Doe] allegedly engaged in sexual contact 'without her consent *while* [Roe] was

incapacitated' (emphasis added), not that [Doe] engaged in sexual contact 'without her consent

*because* [Roe] was incapacitated." Pl. Ex. G.  Thus, Doe's argument that he lacked reasonable

notice is without merit.

Doe's notice argument also fails because he identifies no different or additional evidence

he would have offered if the notice stated more explicitly that incapacitation was not the only

aspect of "consent" that would be considered.  To the contrary, even if incapacitation were the

only issue, Doe had every reason to provide the investigator a complete account of his encounter

with Roe, and he does not claim that he did otherwise.

### 3.     Doe was not entitled to review the evidence until it was assembled.

Doe argues that BC breached its obligation of fairness because he was not permitted to

review the evidence until it was all assembled.  Pl. Mem. at 23.  Doe points to no requirement in

BC's policies or in law that a university provide copies of transcripts and evidence prior to conducting interviews or contemporaneously as the evidence is gathered.  Doe was provided access to all the evidence prior to any findings being made and prior to the investigator's preparation of the report, and he was allowed to provide comments and additional evidence after reviewing the evidence.  As noted in the investigation report, Doe's attorney also was provided with a copy of the evidence and an extension of time to review it, and counsel was able to assist Doe in formulating his response.  **Exhibit A**, Report at 8-9.  BC's process was entirely fair and consistent with its policy.

### 4.    Doe was provided an effective appeal.

Doe argues that he was unfairly prohibited from appealing on the basis that the investigators' decision was not supported by the evidence or was otherwise unfair, unwise, or simply wrong. Pl. Mem. at 24 (citing *Doe v. Brandeis Univ.*, 177 F. Supp. 3d at 607).  Doe correctly notes that the College allows appeals only on the basis of material procedural error and new evidence not available at the time of the original decision.  *Id.*  In fact, universities need not provide any right to appeal a student disciplinary decision. *Winnick v. Manning*, 460 F.2d 545, 549 n.5 (2d Cir. 1972); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 14 (D. Me. 2005).  It follows that when universities provide for an appeal, they can limit the grounds for appeal, and that where a university expressly limits an appeal to procedural grounds, a student has no expectation of a review of the merits of the case. *See Gomes*, 365 F. Supp. 2d at 33; *see also Doe v. Trs. of Bos. Coll.*, 892 F.3d at 88 (in analyzing the fairness of student disciplinary proceedings, the court limits it focus to compliance with the express contractual promises).

The *Brandeis* case on which Doe relies is distinguishable and has not been cited by the First Circuit. The plaintiff in that case could appeal only on the basis of procedural error, which

was one factor among many the Court considered in determining that the plaintiff had been denied a fair process, including the facts that, unlike here, the plaintiff was prevented from providing witnesses and evidence, he was denied the assistance of an attorney, and he was not provided any details of the numerous allegations against him. 177 F. Supp. 3d at 607.

### 5.    BC properly applied the investigator model.

Doe argues that BC's single investigator model was unfair and failed to provide him with an independent process. This, like Doe's other fairness arguments, should be rejected under *Boston College*, as a claim not based on the terms of the policy. BC, in its discretion, adopted the single investigator model, and it is not for the students or the Courts to second guess that decision and impose different procedures on the College. *See Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 35 (1st Cir. 2007) (a private university's handling of student discipline is entitled to considerable deference). Moreover, combining investigative and adjudicative functions in a single person does not violate any principle of due process or basic fairness. *See Withrow v. Larkin*, 421 U.S. 35, 47-55 (1975); *accord Pathak v. Dep't of Veterans Affairs*, 274 F.3d 28, 33 (1st Cir. 2001); *see also Doe v. Miami Univ.*, 882 F.3d 579, 601 (6th Cir. 2018).

### 6.    Doe's investigation was thorough and impartial.

Doe argues that BC's investigation was not thorough or impartial. Pl. Mem. at 13. His argument is based on his disagreements with the way the investigators viewed the evidence and made assessments of credibility. The fact that the investigators made credibility assessments different from what Doe would have preferred, or different from what another reviewer – or the Court – might have made, is of course irrelevant. Such credibility determinations are not for the Court to second-guess. *See Doe v. Phillips Exeter Acad.*, 2016 WL 6651310, *2 (D.N.H. Nov. 10, 2016) (It is not the court's role to "review of the investigator's factual findings and

conclusions."); *Doe v. Univ. of Dayton*, 766 F. App'x at 288 (investigator not required to draw respondent's preferred conclusions from the evidence); *see also Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d at 14; *Morale v. Grigel*, 422 F. Supp. 988, 1004-1005 (D.N.H. 1976); *Schaer*, 432 Mass. at 479 n.9, 735 N.E.2d at 379; *cf. Doe v. Univ. of Denver*, No. 16-CV-00152-PAB-KMT, 2018 WL 1304530, at *11 (D. Colo. Mar. 13, 2018); *Yu*, 97 F. Supp. 3d at 462. And in fact, as the investigation report shows, there was ample evidence – which did not turn solely on Roe's credibility – that Doe did not obtain unambiguous consent to engage in sexual intercourse with her. Thus, it was entirely within the investigators' discretion to determine that the alleged inconsistencies Doe pointed to did not compel a different result. Doe also argues that the appellate officer was not thorough when she failed to require the investigators to re-interview a witness. Pl. Mem. at 13. As the appellate officer correctly noted, Doe failed to identify what evidence of consent the witness would provide and the witness failed to provide the information when he was interviewed.

Simply put, Doe has provided no facts to support his conclusory allegation that the investigation was not impartial. Such allegations are insufficient to overcome the presumption of honesty and integrity of university decision makers. *See Doe v. Trs. of Bos. Coll.*, 892 F.3d at 84; *see also Pathak*, 274 F.3d at 33 (*citing Withrow*, 421 U.S. at 47).

### 7.    The investigators applied the correct standard of review.

Doe argues that the investigators failed to apply the preponderance of the evidence standard. Pl. Mem at 14. Again, this allegation is based on Doe's disagreements with the way the investigators viewed the evidence and made assessments of credibility, and is not the basis for a breach of contract claim. Moreover, Doe's claim rests on his own account of the events at

issue and fails to take into consideration that Roe had a different account of what happened, and that the investigators did not credit many of the details Doe alleges. Doe's arguments also fail to take into account the strict definition of Consent in the Sexual Misconduct Policy. It is clear under the policy that Roe consenting to taking her shorts off did not amount to consent to penetrate her with his penis.

### 8.    BC did not violate any obligation of confidentiality.

Doe alleges that BC approved of Roe's violation of confidentiality when she reported to the ███████████ that one of ███████████ had had sex with her without her consent. Pl. Mem. at 16. Doe admits that at the time she did this, Roe had not yet made a formal complaint. Section 5 of the Student Guide requires confidentiality of "all parties, including the respondent, complainant, witnesses, advisers, and the hearing officer." **Exhibit B**, at § 5.7.2. Where no formal complaint had yet been filed, there were no "parties" to a student conduct proceeding, and thus Roe had no obligation of confidentially. BC could not have prevented her from, or rebuked her for, reporting the sexual assault to responsible university personnel, especially where she did so to educate and prevent reoccurrence. The Sexual Misconduct Policy specifically states that a victim may report incidents to non-confidential resources. Pl. Ex. A at 9.

### 9.    BC did not breach its obligation to presume Doe was innocent.

Doe's argument that BC breached its obligation to presume him innocent rests on nothing but conclusory allegation that the investigators were biased against Doe. Pl. Mem at 17. As explained above, Doe fails to offer the evidence required to support such a claim.

### 10.    BC did not breach an obligation to do the investigation in 60 days.

Doe argues that that the timespan of the investigation violated the university's 60-day policy. Pl. Mem. at 17-18. The policy that states, "the University will endeavor to complete the

investigation within 60 working days of the investigation's commencement" and that "this timeframe may be extended to ensure the integrity and completeness of the investigation." Pl Ex. A at 12. Doe makes no allegation that BC did not actually endeavor to conduct the investigation in a timely manner; rather, he just complains that it took too long. His allegations ignore the numerous interviews that had to be conducted and the large amount of evidence that was gathered. His argument also ignores the fact that it was in his interest for the investigation to be as complete as possible, which required more time, and that during the investigation there were several university holidays and exam periods.

**B.   Doe is Not Likely to Succeed on His Estoppel Claim.**

Doe's promissory estoppel claim is duplicative of his breach of contract claims and is unlikely to succeed on the merits for the reasons stated above.[2]

**C.   Doe is Not Likely to Succeed on His Title IX Claim.**

Doe alleges that BC discriminated against him on the basis of his gender in violation of Title IX, asserting the theory of "erroneous outcome." Pl. Mem. At 6-9. Doe is unlikely to succeed on the merits of this claim.

A student claiming an erroneous outcome in violation of Title IX must show that he was innocent but wrongly found to have committed an offense and that gender was a motivating factor in the erroneous finding. *See Doe v. Colgate Univ.*, 760 F. App'x 22, 30 (2d Cir. 2019); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *accord Doe v. Trs. of Bos. Coll.*, 892 F.3d at 90. Doe can show neither. As explained above, there are no procedural irregularities that cast any articulable doubt on the validity of the investigator's findings. *See Doe v. Univ. of the*

---

[2] Moreover, where a written contract governs the same subject matter, recovery under a quasi-contract theory is not available. *Trent Partners & Assocs. Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 104-05 (D. Mass. 1999); *see also Brown Univ.*, 2016 WL 715794, at *15; *Doe v. Brandeis Univ.*, No. 15-cv-11557-FDS, 2016 WL 1274533, at *41 (D. Mass. Mar. 31, 2016).

*Sciences*, No. CV 19-358, 2019 WL 3413821, at \*5 (E.D. Pa. July 29, 2019) (rejecting similar claims of procedural irregularities).

Moreover, Doe also has failed to establish a causal connection between the allegedly flawed outcome and gender bias. To be actionable under Title IX, allegations of bias must pertain to the specific individuals involved in the disciplinary proceeding at issue. *See Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 188-189 (D. Mass. 2017) (citing *Mallory v. Ohio Univ.*, 76 F. App'x 634, 640 (6th Cir. 2003)); *see also Doe v. Case Western Reserve Univ.*, No. 1:17 CV 414, 2019 WL 1982266, \*9, 11 (N.D. Ohio May 2, 2019); *Doe v. Univ. of Denver*, 2018 WL 1304530, at \*11. But Doe has not alleged any statements, nor any other evidence, which evidence any anti-male bias on the part of the investigators who made the findings. *See Yusuf*, 35 F.3d at 715. While Doe has alleged that DOE and OCR policies pressured colleges and universities to actively pursue allegations of sexual assault on campus, there is no allegation – much less any evidence – that BC or its investigators were pressured to treat men differently or find men responsible.[3] The bare allegation that only males have been suspended or expelled for sexual assault also does not show bias. Compl. ¶ 177. *See Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 92 (1st Cir. 2018) ("The gender of the students accused of sexual assault is the result of what is reported to the University, and not the other way around."); *see also Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).

Nor do Doe's conclusory characterizations of "pressure" (Compl. ¶¶ 26, 36) constitute "adequate documentary evidence" upon which the court can rely to find evidence of a discriminatory bias. *Campbell Soup Co. v. Giles*, 47 F.3d 467, 470-71 (1st Cir. 1995). Courts

---

[3] Doe's allegations about the Department of Education's "Dear Colleague" Letter ("DCL") do not support a claim of gender bias. *See Doe v. Trs. of Bos. Coll.*, 892 F.3d at 92. Nor does Doe explain how the Department's withdrawal of the DCL could possibly create pressure on BC to find men guilty of sexual assault.

repeatedly have rejected conclusory allegations of pressure when, as in this case, there is no evidence that outside pressure actually influenced the school to aggressively pursue sexual assault cases in a biased manner. *See Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017); *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 956 (N.D. Ill. 2017); *see also Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017).

Nor does the allegation that BC adopted the investigator model policy to "demonstrate an aggressive stance against sexual assault on campus, with the intent of making the reporting of assaults more easily available" support a claim of bias. Pl. Mem. at 9-10. Complainants of sexual assault can be male or female, and increasing enforcement of sexual misconduct rules does not evidence anti-male bias. *See Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1227 (D. Or. 2016), *aff'd*, 925 F.3d 1133 (9th Cir. 2019); *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d at 684; *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 602 (S.D. Ohio 2016) (encouraging complainants to come forward is a "laudable goal"). Moreover, the First Circuit has held that use of the term "victim" in BC's disciplinary procedures does not support a claim of bias. *Doe v. Boston Coll.*, 892 F.3d at 92.

### D. Doe is Not Likely to Succeed on His Negligence Claim.

Under the First Circuit's *Boston College* decision, Doe's claim of negligence based on BC's allegedly inadequate investigation is not likely to succeed on the merits. In fact, insofar as the claim is based on the handling of his conduct proceeding, it is barred. *Doe v. Trs. of Bos. Coll.*, 892 F.3d at 94-95 (holding university owed no duty of care under tort law in context of student disciplinary proceedings). Doe's attempt to couch his claims in negligent training and supervision also fails. Compl. ¶ 281-282. An employer is liable for failure to exercise

reasonable care in retaining and supervising an employee only when the employer knows or should know of problems with the employee that indicate her unfitness for her position and the employer fails to take action, thereby exposing third parties to an unreasonable risk of physical harm. *Foster v. The Loft, Inc.*, 26 Mass. App. Ct. 289, 289-91, 526 N.E.2d 1309, 1311 (1988); *see also Saldivar v. Racine*, 818 F.3d 14, 21 (1st Cir. 2016); *Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. 241, 246 (D. Mass. 1997). Doe's claim fails because he has failed to allege any facts showing that any particular BC employee was unfit and that BC was aware the employee was unfit and failed to take action.  Rather, Doe merely alleges that the investigators and appellate officer made decisions that Doe disagrees with and that their decisions were contrary to the College's procedures (they were not, as explained above).  Compl. ¶ 282-286.

## III.   DOE HAS NOT DEMONSTRATED A LIKELIHOOD OF IRREPARABLE HARM IF A PRELIMINARY INJUNCTION DOES NOT ISSUE.

Even if Doe were capable of showing a likelihood of success on the merits, which he is not, he has failed to establish that he will suffer irreparable harm in the absence of preliminary injunctive relief.  Irreparable harm is "a substantial injury that is not accurately measurable or adequately compensable by money damages."  *Ross–Simons of Warwick v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996).   "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."  *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).  Moreover, "an attempt to show irreparable harm cannot be evaluated in a vacuum; the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem." *Ross-Simmons*, 102 F.3d at 19.  Doe has failed to meet his burden to show that, without injunctive relief, he likely will suffer immediate irreparable substantial injury that is not adequately compensable by money damages.

14

Doe's claims of "irreparable" harm fail because the contemplated harms all are compensable with monetary damages. Doe claims that a final, adverse outcome in his disciplinary case will cause him to suffer lost educational and career opportunities. Cases in Massachusetts, ignored by Doe, establish that such harms are entirely compensable with money damages. *See Doe v. Amherst Coll.,* No. 14-CV-30114-MGM, 2014 WL 12597613, at *3 (D. Mass. July 28, 2014) (denying preliminary injunctive relief to a student challenging a college's disciplinary proceedings because anticipated emotional harm and missed educational or career opportunities are compensable with money damages) (citing *Powell v. City of Pittsfield*, 221 F. Supp. 2d 119 (D. Mass 2002)); *see also Doe v. Williams College*, 3:16-cv-30184-MGM, Dkt. No. 65 & 74 at p. 51-55 (D. Mass. March 29, 2017) (denying preliminary injunction because harm from expulsion from college is compensable with money damages); *Phillips v. Marsh*, 687 F.2d 620, 622 (2d Cir. 1982) ("no irreparable harm … would accrue to [student expelled from military academy] in allowing her graduation to await the outcome of the trial on the merits; any damages from deferring her career as a military officer in that period of time would surely be compensable by monetary damages").

Here, Doe will only suffer ▮▮▮▮▮▮▮▮ in graduating from BC; he will not lose the opportunity to complete his College education, nor has he had to withdraw from any ongoing classes as a result of his suspension. The ▮▮▮▮▮▮▮▮ in the commencement of a career caused by a delay in graduation is easily compensated with damages. *See Schulman v. Franklin & Marshall Coll.*, 371 Pa. Super. 345, 350, 538 A.2d 49, 52 (1988) (time lost from suspension from college is compensable through money damages and is not irreparable harm); *accord Knoch v. Univ. of Pittsburgh,* No. 2:16-CV-00970-CRE, 2016 WL 4570755, at *8 (W.D. Pa. Aug. 31, 2016). Moreover, any claim of lost future career prospects caused by a gap in his

15

academic record is "purely speculative." *See Stockstill v. Quinnipiac Univ.*, No. 3:10-CV-265

(VLB), 2010 WL 2011152, at *5 (D. Conn. May 19, 2010) (missing a semester of classes is not

irreparable harm). Unlike in *Phillip v. Nat'l Collegiate Athletic Ass'n*, 960 F. Supp. 552, 558 (D.

Conn 1997), and *Doe v. Pennsylvania State Univ.*, 276 F. Supp. 3d 300, 314 (M.D. Pa. 2017), it

is not likely that Doe's graduation will be interrupted and delayed for a number of years, nor has

Doe alleged facts showing that BC's actions would deny him his right to a scholarship or

acceptance into a graduate school that these courts have recognized as irreparable harm.

Doe's reliance on student discipline cases involving public institutions such as *Doe v.*

*Baum*, 903 F.3d 575, 582 (6th Cir. 2018), *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 829

(E.D. Mich 2018), and *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 829 (E.D. Mich. 2018),

where irreparable injury can be presumed, are misplaced. As a private institution, BC has not

deprived Doe of any constitutional rights.

This case is easily distinguished from *Doe v. Middlebury College*, No. 1:15-cv-192-JMG,

2015 WL 5488109 (D. Vt. Sept. 16, 2015), on which Doe relies, which involved "a unique

situation." Dkt. No. 4-3 at p. 43. The college in that case attempted to re-investigate a case in

which the plaintiff already had been exonerated, notwithstanding that the college's policy did not

allow for a second investigation. 2015 WL 5488109 at *3. There is no clear policy violation in

this case. This case is also distinguishable because the plaintiff in *Middlebury* had obtained a job

offer after successful completion of an internship. Here, Doe had not obtained a specific job

offer, from any specific ████████ or otherwise.

Doe's reliance on *Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704, 712 (S.D. Ohio 2016),

aff'd, 872 F.3d 393 (6th Cir. 2017), is also unavailing. The decision in that case stemmed from

the "unique" nature of plaintiff's graduate program, in which a one-year suspension would have

affected plaintiff's ability to pursue a career.

Doe's case is also distinguishable from *Maczaczyj v. State of N.Y.*, 956 F. Supp. 403, 408 (W.D.N.Y. 1997). In that case, the plaintiff, a disabled student seeking accommodations under the ADA, was suffering from mental illness and the impact of his exclusion from the master's program had a significant negative impact on his progress at overcoming his illness; the likelihood that he would suffer additional psychic harm was the deciding fact in that case.

Nor is Doe's claim supported by his citation to *Doe v. Univ. of Notre Dame,* No. 3:17CV298-PPS/MGG, 2017 WL 1836939, at *10 (N.D. Ind. May 8, 2017), which rests on entirely different facts and subsequently was vacated, *Doe v. Univ. of Notre Dame*, 2017 WL 7661416 (N.D. Ind. Dec. 27, 2017). The Court in that case initially granted a preliminary injunction, based in part upon the conclusion that the university's investigation may have been "arbitrary and capricious" in failing to obtain and review relevant text messages that the female accuser selectively had omitted. 2017 WL 1836939, at *3. In this case, plaintiff does not allege that the investigator failed to interview any witnesses or obtain any evidence that was not already available. The essence of Doe's complaint is not that BC failed to follow its policies, but merely that the Investigators failed to view the evidence in the way he would have liked.

Here, if Doe is successful at overturning the disciplinary decision, there is no evidence that a gap year in his education will cause him harm in the form of stigma or inability to pursue a career. There is no evidence that employers will demand to see academic transcripts or be able to tell from a resume that Doe was suspended for a period of time. Nor is there any evidence that a person whose disciplinary finding is vacated will suffer stigma from having to explain that he was suspended but later vindicated.

Doe also argues that he will suffer irreparable harm from the loss of ████████████████

17

as a ▮▮▮▮▮▮▮. Loss of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮, do not warrant the extraordinary remedy of a preliminary injunction. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In any event, even from the

facts alleged by Doe, it is entirely speculative that he will be unable to continue to resume

▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮after his suspension and not be in a position ▮▮▮▮▮▮. Doe's self-

serving affidavit about his likelihood of ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮, is entirely

speculative and unsupported.

## IV.    THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH AGAINST INJUNCTIVE RELIEF.

BC has a strong interest in enforcing its student conduct policies, including its prohibition

against sexual misconduct. Courts should not discount the harm resulting from an injunction that

undermines a college's authority to address such misconduct. *See Boucher v. Sch. Bd. of Sch.*

*Dist. of Greenfield*, 134 F.3d 821, 827 (7th Cir. 1998) (vacating preliminary injunction where

allowing a student to remain enrolled undermined the school's authority to take disciplinary

action). Moreover, preventing BC from maintaining a hostile-free environment for its students,

including Roe, who remains enrolled at BC, is a significant public interest that weighs in favor or

denying the injunction. *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854, 871 (S.D. Ohio 2016)

(citing *Bonnell v. Lorenzo*, 241 F.3d 800, 822 (6th Cir. 2001)). Contrary to the purposes of Title

18

IX, allowing students found responsible for sexual assault to remain on campus and fully

participate ███████████████████████ sends a message to would-be complainants

that their complaints will be snubbed, that their efforts to seek remedies for harassment and

discrimination will be in vain, and that the importance of ███████ will outweigh the

rights of victims.  Doe has been found responsible by two investigators trained and experienced

under the College's procedures, and Doe's appeal was considered and denied.  It is well-settled

that Courts should not lightly interfere with such judgments.  *See Davis v. Monroe Cty. Bd. of

Educ.*, 526 U.S. 629, 648 (1999) ("courts should refrain from second-guessing the disciplinary

decisions made by school administrators"); *Havlik*, 509 F.3d at 35 (courts must accord a school

some measure of deference in matters of discipline); *Morale*, 422 F. Supp. at 1004–1005

("federal courts do not sit in judgment of the wisdom of school administrators, students or even

attorneys.").  The balance of equities and the public interest thus favor preserving the status quo,

rather than granting the extraordinary remedy of mandatory injunctive relief.

### CONCLUSION

The Court should deny Doe's motion for a temporary restraining order and preliminary
injunction.

TRUSTEES OF BOSTON COLLEGE,

Daryl J. Lapp (BBO No. 554980)
    daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
    liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
617.230.0100

## Certificate of Service

This document was served electronically upon all counsel of record by email on July 30, 2019.

Elizabeth H. Kelly

81121181v.2