# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOHN DOE,                    :

                              :

                              :

        Plaintiff,           :

                              :   Civil Action No:  1:19-cv-11626-DPW

                              :

        -against-            :

                              :

                              :

TRUSTEES OF BOSTON COLLEGE,    :

                              :

                              :

        Defendants.        :

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff John Doe*
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**

**101 Federal Street, Nineteenth Floor**
**Boston, Massachusetts 02110**
**(617) 209-2188**
**(617) 209-2127**

## INTRODUCTION

Plaintiff John Doe[1] respectfully submits this Memorandum of Law in Opposition to the Motion by Trustees of Boston College ("Defendant" or "BC") to dismiss Plaintiff's Amended Complaint ("AC") pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court should deny the Motion in full as Plaintiff amply states plausible claims for relief under federal and state law.

## STATEMENT OF FACTS[2]

### I.      The Events of November 3-4, 2018

Plaintiff John Doe and fellow BC student, Jane Roe ("Roe"), matriculated to Boston College in Fall of 2017 and met during their freshman year. AC ¶¶ 13, 74. Doe and Roe were on friendly terms, though not close. AC ¶ 74. On November 4, 2018, at approximately 1:30 a.m., Doe and few friends spotted and joined Jane Roe while she was getting food at a campus dining hall. AC ¶ 83-84. Roe purchased food for Doe and his friends and accompanied them back to Doe's suite. AC ¶ 88-90. The group chatted and ate their food in the common room of Doe's suite. AC ¶ 91. After Doe's friends left, Doe and Roe were alone in the common room. Doe asked Roe if she wanted to go into his room. Roe replied "Yes." AC ¶ 92.

Upon entering Doe's room, Roe followed Doe onto his bed. AC ¶ 93. Doe and Roe started to kiss, then laid down to continue kissing and grinding against each other. AC ¶ 17. Roe asked Doe to kiss her neck, and as he did so, Roe stated to him, "I know you want to do it," which Doe understood to mean engage in sexual intercourse. AC ¶ 95-96. Roe assisted Doe in removing her spandex shorts and instructed Doe to "get a condom." AC ¶ 97-99. Upon Doe's return to the bed, he did not put the condom on immediately, at which point Roe stated, "other people have done that [had sex without a condom]", to which Doe replied, "I wouldn't do that." AC ¶ 100. Doe put

---

[1] This Court previously granted Plaintiff's motion to proceed under a pseudonym [ECF No. 3; ECF No. 34].
[2] A full account of the facts can be found in the Amended Complaint, ECF No. 52, incorporated herein by reference.

the condom on, then, after being instructed by Roe to "do it," penetrated her vagina with his penis. AC ¶ 102. Roe and Doe engaged in sexual intercourse for approximately five to seven minutes, during which Roe instructed Doe verbally to "go slow" and "keep it there." AC ¶ 102-104. Doe asked Roe to flip onto her stomach, but she replied that she did not want to because she "did not want [him] to cum too fast." AC ¶ 105. After Doe told her he would not, she turned on her stomach. AC ¶ 105. After several minutes in this position, Roe stated that her back hurt, and the sexual encounter ceased. AC ¶ 106. The two then got dressed, Doe walked Roe to the door, and Roe said goodbye to Doe, as well as one of his suitemates in the common room. AC ¶ 107.

## II.   Roe's Complaint, The Investigation, and Disciplinary Proceedings



Days after the encounter, Roe, accompanied by ▉▉▉▉▉▉▉▉▉▉▉▉▉ met with BC's ▉▉▉▉▉▉▉▉▉▉ to inform ▉▉▉▉▉ ▉▉▉▉▉▉ had engaged in misbehavior relating to alcohol and consent, and requested ▉▉▉ ▉▉▉▉▉▉▉▉. AC ¶ 113. After that meeting, ▉▉▉ reported Roe's account of the events to the Associate Vice President of Student Affairs/Student Title IX Coordinator. AC ¶ 114.

On December 7, 2018, Roe decided to move forward with an investigation. She subsequently met with BC's Associate Dean of Students to discuss the charges. AC ¶ 115, 117. Dean Kelly issued a mutual stay away order on December 11, 2018, and met with Doe on December 14, where she informed Doe he would receive written notification (the "Notice") of the charges, which he did not receive until one month later. AC ¶ 119-120. BC's external investigator interviewed Roe twice before Doe received written notification of the charges. AC ¶ 121-122. The Notice stated the charges consisted of "engaging in non-consensual sexual contact through kissing and touching of intimate body parts and penetrating her vagina with [his] penis without her consent while [Roe] was incapacitated," and noted that if additional allegations arose *"we [BC] would*

*provide an updated notice to you."* AC ¶ 123-126. Doe met with BC's Assistant Dean of Students on January 29, 2019, and then, after submission of evidence to corroborate his timeline and account of events, again on March 11. AC ¶ 128, 130, 134. In an email of February 27, 2019, Doe requested to review the evidence prior to his second interview, however, the Dean refused, stating that Investigators would not share evidence prior to his follow up interview. AC ¶ 132.

BC made the evidence binder available to Doe to review on April 5, 2019. AC ¶ 138. BC provided Doe ten (10) calendar days to review the binder and did not permit Doe to remove the materials from the office and prohibited him from making copies of the full investigation file, of approximately sixty (60) pages. AC ¶ 138. Doe submitted his timely response to the binder, where he asserted that the investigation did not support a finding of responsibility because the evidence demonstrated that Roe (i) did not lack the capacity to engage in a consensual sexual encounter, and (ii) actively participated in the sexual encounter. AC ¶ 140. At all times during the investigation, Doe understood the charges against him to be non-consensual contact due to incapacitation, and focused his defense on disproving this specific charge by identifying witnesses and evidence that would refute Roe's claims of incapacitation. AC ¶ 151.

## III.    <u>The Disciplinary Decision</u>

Doe received a Resolution Letter on June 18, 2019 that noted that Dean Kelly reviewed and approved the final investigative report, which found him responsible for Sexual Misconduct: Sexual Assault by a preponderance of the evidence. AC ¶ 149-150.[3] Remarkably, although the Investigators concluded that Doe did not know, nor could he have reasonably known that Roe was incapacitated by alcohol, they still found Doe responsible for assault. AC ¶ 150. Apparently, when

---

[3] Unlike BC's processes for non-sexual forms of alleged misconduct, which permit for a full hearing before a neutral third party, BC's procedures for sexual misconduct claims requires a closed-door process whereby the investigators reach a decision with no formal hearing. AC ¶¶ 147-148.

the Investigators concluded that the evidence did not support a finding of non-consent by incapacitation, they changed their theory of the case, to a charge of generic non-consensual sexual contact. AC ¶ 151. BC failed to notify Doe at any time of these additional charges, despite plainly stating they would notify Doe of any new charges. AC ¶ 126, 151.

The Resolution Letter notified Doe of his suspension from BC effective immediately, for two full semesters, through ▉▉▉▉▉▉▉, and upon completion of the suspension, he will be required to reapply for admission and be subject to probation for ▉▉▉▉▉ upon return. AC ¶ 152.

### IV.    The Appeal and Subsequent Actions

Doe appealed the wrongful finding of responsibility and sanction of one year on the grounds that (i) BC committed numerous material procedural errors that likely adversely affected the result of the conduct adjudication, and (ii) Doe recently became aware of new evidence that was unavailable to him during the adjudication process – that his roommate heard affirmative verbalizations from Roe during Roe and Doe's encounter because of his location in the common room, which likely would have affected the finding. AC ¶ 153-155. Despite this, BC erroneously denied Doe's appeal on July 24, 2019 on the grounds that it did not state a valid ground for appeal, and Doe subsequently filed this action on July 29. AC ¶ 156. After this Court initially granted a preliminary injunction staying imposition of the suspension, BC reinstated Doe's suspension after the First Circuit vacated the preliminary injunction awarded by this Court. The suspension began on ▉▉▉▉▉▉▉▉ and will continue through ▉▉▉▉▉▉▉▉. ECF No. 65-1.

### ARGUMENT

### I.    The Legal Standard Governing Motions to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he burden is on the movant to prove that the Complaint presents no claim upon which relief can be granted."

*In re Ryan*, 05-17331-WCH, 2006 WL 1314299, at *2 (Bankr. D. Mass. May 15, 2006). To overcome a motion to dismiss, the Complaint must simply supply "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of the causes of action alleged. *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 556 n. 14 (2007). This District has consistently recognized that in a discrimination action, heightened fact pleading is not required, "but only enough facts to state a claim to relief that is plausible on its face." *Sisco v. DLA Piper LLP,* 833 F. Supp. 2d 133 (D. Mass. 2011). *See also Twombly,* 550 U.S. at 547 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)); *Weaver-Ferguson v. Bos. Pub. Sch.,* No. CV 15-13101-FDS, 2016 WL 1626833, at *3 (D. Mass. Apr. 22, 2016).

At the motion to dismiss stage, the court "is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim. For that reason, the court, in judging the sufficiency of the complaint, must accept the facts alleged and construe ambiguities in the light most favorable to upholding the plaintiff's claim[s]." *Doe v. Columbia Univ.,* 831 F.3d 46, 48 (2d Cir. 2016). Accordingly, "[t]he issue is not whether a plaintiff will ultimately prevail[,] but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974); *Swierkiewicz,* 534 U.S. at 511. The pertinent question for this Court is whether Defendant has proven that "the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." 550 U.S. at 569. *See also Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). Defendant here has not. Thus, the motion to dismiss should be denied.

## II.   Plaintiff States Claims for Breach of Contract and Basic Fairness

### A.   Standard of Review

It is well-established that the relationship between a student and his educational institution is contractual in nature, with the terms of contract established by the student handbook and other related policies. *See Doe v. W. New England Univ.,* 228 F. Supp. 3d 154, 169 (D. Mass. 2017); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 593 (D. Mass. 2016). In reviewing a breach of contract claim brought by a student against a private school, courts apply a standard of "reasonable expectations." *Doe v. Amherst Coll.,* 238 F. Supp. 3d 195, 215 (D. Mass. 2017). This standard "requires courts to interpret the terms of the contract by giving them the meaning the party making the manifestation, the [college], should reasonably expect the [student] to give it." *Ibid.* (internal citations omitted). In addition, "the implied covenant of good faith and fair dealings imposed on every contract by Massachusetts law, applied in the context of school disciplinary proceedings, creates an independent duty to provide basic fairness" in the disciplinary process. *Doe v. Trustees of Boston Coll.*, 892 F.3d 67, 87 (1st Cir. 2018).

While "'[b]asic fairness' is an uncertain and elastic concept, and there is little case law to serve as guideposts in conducting the fairness inquiry," *Brandeis Univ*. at 177 F. Supp. 3d at 601, it consists of two parts. First, procedural fairness: whether the process sufficiently provided the accused student a reasonable and fair opportunity to defend himself. Second, substantive fairness: specifically, even if the college conducted the procedure fairly, whether the college made an arbitrary or irrational decision, potentially tainted by bias or unfairness. *Id.* BC's Code of Student Conduct expressly provides that "[t]he student conduct system exists to protect the rights of the

Boston College community and assure *fundamental fairness* to the complainant and to the respondent." AC ¶ 237.[4]

In the instant case, Plaintiff sufficiently alleges claims for breach of contract and breach of the implied covenant, for BC's failure to comply with Plaintiff's reasonable expectations, as well as principles of basic and fundamental fairness.

## B. BC's Review/Appeal Procedures

Plaintiff adequately alleges two grounds for breach of contract claims against BC with regard to BC's review and appeal process: first, that the process itself, by providing no standard of review and narrowly circumscribing the grounds for appeal, is fundamentally unfair, and second, that BC breached the reasonable expectations of Plaintiff by arbitrarily approving Investigators' Report and denying his appeal despite his having set forth proper grounds as expressly delineated under BC policy.

### i. The Limited Grounds for Review/Appeal are Fundamentally Unfair

As set forth in the Amended Complaint, in cases of alleged sexual misconduct, findings of responsibility are made by "one or more internal and/or external investigators." AC ¶¶ 62, 69. The investigators' findings are then submitted to the Office of the Dean of Students and Student Affairs Title IX Coordinator "for review and approval." AC ¶¶ 69, 288. As set forth in the Amended Complaint, this procedure is "devoid of any articulated standard of review." Indeed, Court noted

---

[4] BC misleadingly asserts that, where the contract itself promises "fundamental fairness", the "fairness" analysis then focuses on whether the school abided by its established procedures. Def.'s Br. 8. In fact, the very case cited by Defendant—the First Circuit's decision earlier in this case—*directly contradicts* that proposition: "[t]o be clear, no party asserts that a school's mere adherence to its policies itself resolves a basic fairness claim." *Doe v. Trustees of Boston Coll.*, 942 F.3d 527, 535 (1st Cir. 2019). Instead, the Circuit has held that "whenever a school expressly promises no less than basic fairness, . . . the school's *implied* duty becomes superfluous and the court's analysis to ensure that the disciplinary proceedings were 'conducted with basic fairness' focuses on assuring compliance with the *express* contractual promise." *Doe v. Trustees of Boston Coll.*, 892 F.3d 67, 88 (1st Cir. 2018) (emphasis added) (citation omitted). The First Circuit was merely noting that where "basic fairness" is expressly promised, a breach of basic fairness may be asserted as a *direct* breach of contract claim, not an *implied* breach. It did not hold that such an express promise substantively changes the fairness analysis.

during oral argument on Plaintiff's motion for preliminary injunction, the very wording of the Policy appears to indicate that the only option available is to "approve," and there is no articulated standard of what such "review" entails. Tr. of Hr'g, ECF No. 46, at 10:3-12:8; 13:21-23 ("it appears that they have simply passed along as essentially ipse dixit the investigators' report."). In the instant case, Plaintiff raises considerable credibility and evidentiary issues that investigators disregarded and gave insufficient weight in the ultimate analysis—including, notably, that Roe acknowledged having a conversation with Plaintiff about condoms immediately preceding the intercourse. AC ¶¶ 108, 210. Yet, the responsibility finding was apparently reviewed and approved. Such facts, read in the light most favorable to Plaintiff, indicate that the "review and approve" process is simply a rubber-stamp, bereft of any meaning, violating basic fairness.

Moreover, after the Dean of Students and Title IX Coordinator perform their ambiguous "approval," BC provides only two narrow grounds for appeal: (i) previously unavailable information that likely would impact the outcome, or (ii) material procedural error that likely adversely affected the outcome. AC ¶ 273. Notwithstanding the severe ramifications of a finding of responsibility, these narrow grounds for appeal deprive a student of the opportunity to contest the finding on all available grounds, including that the investigators' findings were not supported by the evidence.  In other words, according to BC's policy, the investigators could make an entirely arbitrary decision of guilt, and there is no effective means for the student to appeal from such a decision.  This process is therefore fundamentally unfair.  *See, e.g. Brandeis Univ.,* 177 F. Supp. 3d at 607 (holding a school disciplinary process not complaint with basic fairness where "[c]onspicuously absent from that list is the ability to appeal on the ground that the…decision was

not supported by the evidence, or…otherwise unfair, unwise, or simply wrong"). Plaintiff thus sufficiently alleges that BC's Policy lacks fundamental fairness.[5]

> ii.    The Review/Appeal Failed to Comport with
> Plaintiff Doe's Reasonable Expectations

In addition to being fundamentally unfair, Plaintiff sufficiently alleges that BC's review and appeal process failed to comply with his reasonable expectations. First, as discussed above, the existence of some layer of "review" invites the reasonable expectation that a genuine review will be conducted, and that approval will not be arbitrary or capricious. Yet, that is precisely what happened here, where the investigators' report, despite glaring evidentiary issues and irrational conclusions, was rubber-stamped and adopted by BC without coherent analysis or explanation. AC ¶ 149. While BC may disagree as to the sufficiency of the review, that bears no weight here – Plaintiff's allegations must be accepted as true and ambiguities resolved in Plaintiff's favor.

In addition to violating Plaintiff's reasonable expectations of a genuine review, BC also violated Plaintiff's reasonable expectations with respect to his Appeal. According to BC's Policy, "an appeal will be accepted in circumstances where the student is able to provide relevant testimony or other evidence that (i) was unavailable to *the student submitting the appeal* at the time of the adjudication process." AC ¶ 277. Plaintiff submitted an Appeal on precisely this ground: a witness, Roommate 1, who was in Doe's suite during the sexual encounter between him and Roe, told Doe—*after* the finding was issued—that he had heard "unambiguous" sounds of consensual sex from both parties. AC ¶ 274. This information was plainly not available to Doe

---

[5] Defendant's argument that the limited grounds for appeal cannot ground a contract claim because schools are not obligated to provide an appeal in the first place, Defs,' Br. 10, is unavailing.  As the First Circuit has made clear, even if a student did not have a pre-existing right to a particular process, the school's decision to offer that process obligates it to conduct such process with basic fairness. *Doe v. Trustees of Boston Coll.*, 892 F.3d at 87–88.

prior to his appeal. AC ¶ 274.[6] Nonetheless, BC refused to grant the appeal, claiming that the information was "available" earlier. AC ¶ 276. BC's farcical assertion that "it is undisputed that the evidence…was available to Doe" could not be more wrong. Defs.' Br. 11. BC's argument is, in essence: if a witness has crucial information that the investigators failed to gather, it is up to the respondent to conduct his own separate investigation to ensure that nothing was missed.  This is simply preposterous.  Information that was never disclosed to Plaintiff during the investigation is, undoubtedly, evidence that was not "available" to him at the time. That BC argues Plaintiff should have investigated to discover the information earlier is a complete abdication of its responsibilities and a tacit admission that its investigators failed to conduct a "thorough" investigation, as required under the Policy. As this Court noted during the August 20, 2019 hearing:

> Grounds of appeal doesn't say, you know, it was out there and available and nobody found it. It says not known to the student, unavailable to the student. And the state of the record right now, the only thing I have is the student didn't know about it because his roommate, I guess, says he never told him and didn't realize that this was an issue until after the report or after the determination was made. So I don't know how the appeal officer can say that there is not at least a question concerning newly discovered evidence.

Tr. of Hr'g, ECF No. 46, at 19:1-11.

BC's Policy gave Doe a reasonable expectation that an appeal would be granted on the ground of previously unavailable information that would have affected the outcome. Plaintiff adequately alleges that BC neglected to follow its own Policy by refusing Doe's appeal and therefore breached its contract with Doe.

## C.  BC Failed to Provide Doe with Adequate Notice

As BC itself acknowledges, a fair process is one that must afford a respondent adequate notice and opportunity to be heard. Def.'s Br. 8. When BC first notified Doe of the charge, the

---

[6] It also quite clearly goes to the very heart of the question of consent, contrary to BC's spurious claim that Plaintiff did not "demonstrate" that the new evidence could have affected the outcome. Defs.' Br. 11.

matter plainly at issue was whether Roe was incapacitated and thus, unable to consent. At all times during the investigation, Doe understood the charges against him to be non-consensual contact due to incapacitation, and focused his defense on disproving this specific charge by identifying witnesses and evidence to Roe's claims of incapacitation. AC ¶ 151. Yet, BC ultimately found Doe responsible of a charge that had not been directly discussed in the Notice nor throughout the investigation. AC ¶¶ 123-124, 126, 223. As such, BC failed to afford Plaintiff adequate notice and opportunity to defend himself, thus violating basic fairness as well as his reasonable expectations.

BC told Plaintiff at the outset of the process that the key issue was Roe's capacity, and "[i]f during the investigation there are additional allegations, we would provide an updated notice to you." AC ¶ 126. Both the Notice and focus of witness interviews, including the questioning, clearly indicated that the investigation centered on Roe's incapacitation. AC ¶ 247-248. BC cleared Doe of these charges in the Investigatory Report, and then, after absolving Plaintiff of the one charge of which he had been apprised and defended against, changed the theory of the case without notice and instead found him responsible for allegations supported by *separate* policy sections. AC ¶ 250. Indeed, this pivot is *acknowledged* by BC in the Investigatory Report, where the investigators claimed that due to the exoneration, they were then obligated to consider alternate routes by which Plaintiff may have committed a violation. AC ¶ 253. This is not provided for in BC's policy and does not comport with the notice and process, which, throughout, had been focused entirely on Roe's capacity. Plaintiff thus sufficiently alleges breach of contract and basic fairness.

### D.  The Investigation was Not Thorough or Impartial

Plaintiff sufficiently alleges that BC failed to conduct a thorough and impartial investigation, in violation of its Policy. AC ¶ 199-200. First, BC utilizes an investigative model whereby the one entity, the investigator(s) are responsible for investigation and adjudication. AC

11

¶ 283. As this District Court has observed, "[t]he dangers of combining in a single individual the power to investigate, prosecute, and convict, with little effective power of review, are obvious. No matter how well-intentioned, such a person may have preconceptions and biases, may make mistakes, and may reach premature conclusions." 177 F. Supp. 3d at 579. This failure to separate out the differing functions, *combined* with the absence of meaningful opportunity for review, as discussed above, results in a process that deprives the accused of basic fairness and fails to accord with reasonable expectations of a thorough and impartial process. AC ¶ 284, 287-290.

Second, Plaintiff alleges—and BC essentially *acknowledged*—the patent lack of thoroughness of its investigation. To wit: exculpatory evidence belatedly offered by Witness 1— that he was a first-hand, contemporaneous witness to "unambiguous" signs of consensual sex— was not gathered by BC's own investigators. AC ¶¶ 274-276. BC's attempt to lay the blame for this belated discovery on Plaintiff—claiming the information was "available" if only he had performed his own independent, apparently more thorough investigation—is a tacit admission that the investigators failed to do their job. Thus, BC breached its obligations under the Policy and acted in bad faith when it performed a deficient investigation.

Third, Plaintiff amply alleges myriad ways in which the investigation, and the conclusions reached, were irrationally partial to Roe – including the investigators' failure to address credibility issues occasioned by Roe's proven inconsistent claims (for example, initially claiming she did not consent to any activity, and then admitting she consented to all of the sexual activity leading up to penetration), as well as their acceptance of a version of events that Roe admitted she had no reliable memory of, over Plaintiff's clear, consistent memory.  AC ¶¶ 178-179. BC's Policy is also biased in its nature, because it refers to the complainant as "victim" over forty times. AC ¶ 224. "Whether

someone is a 'victim' is a conclusion to be reached at the end of a fair process, not an assumption to be made at the beginning." *Brandeis Univ*., 177 F. Supp. 3d at 573.

As such, BC's process was deficient, unfair, and partial, in violation of its contractual obligations and the implied covenant of good faith.

### E.  The Investigators Improperly Applied the Standard of Evidence

Per the Policy, BC was obligated to assess Roe's claims under the preponderance of the evidence standard. AC ¶ 66. Plaintiff sufficiently alleges that BC breached this obligation. Specifically, Plaintiff alleges that: Roe admitted consenting to "making out", Roe admitted to asking Plaintiff to kiss her neck, Roe admitted to assisting Plaintiff in removing her shorts, and Roe admitted to having a conversation with Plaintiff about using a condom shortly before penetration occurred. Plaintiff also alleges that Roe made statements to witnesses, including via text message, acknowledging that she consented to intercourse with Plaintiff. AC ¶¶ 178-179, 210. For the purposes of this motion, all of these facts must be accepted as true. Yet, BC's investigators ignored this substantial evidence of affirmative consent, and instead focused on immaterial "inconsistencies" in Plaintiff's story – such as the specific location from where he fetched the condom – to find Plaintiff responsible for nonconsensual sexual contact. This finding is patently against the weight of the evidence, and further, violates the presumption of innocence inherent in basic fairness. AC ¶ 206, 208, 210-213, 222. Moreover, the Investigators deemed Roe's version of events more credible despite also finding that she was incapacitated by intoxication, which is inherently contradictory and nonsensical.

As such, Plaintiff more than sufficiently alleges that the investigators failed to apply the appropriate standard of evidence, constituting breach of contract.[7]

---

[7] Defendant's claim that Doe merely "disagree[s] with the investigators' assessments of the evidence", Def.'s Br. 14, is a misdirect. This is not a case of pure he-said she-said where the investigators chose to credit one party over the

**F.  Plaintiff Adequately Alleges Additional Claims for Breach of Contract**

Plaintiff also raises sufficient claims for breach of contract when BC failed to follow its own policies. Specifically, BC violated Doe's right to confidentiality under the Policy when ████, ████████████, permitted Roe to bring her not yet official claim to Doe's ████. AC ¶ 214-215. Defendant's assertion that no violation of confidentiality occurred because this meeting happened prior to the formal complaint ignores that had the administrators had proper training, they would have known to follow proper protocol, including the maintenance of confidentiality. Additionally, BC refused Doe access to evidence, even while questioning him on its veracity and content, until after the completion of his interviews. AC ¶ 270-272. Moreover, BC failed to complete the investigation within sixty days, causing undue delay. AC ¶¶ 36, 226, 228.  Each of these actions constitutes a breach of contract, and together, they deprived Doe of fundamental fairness.

**G.  BC Deprived Doe of an Opportunity to Confront or Cross-Examine his Accuser and Witnesses Interviewed During the Investigation**

While the First Circuit held, in its opinion vacating the preliminary injunction in this case, that the opportunity for live cross-examination is not, standing alone, a requirement for fundamental fairness under existing state contract law, Doe nonetheless submits that the absence of any opportunity for such examination, *combined* deficiencies otherwise identified herein, including the absence of meaningful review or a real appeal process, results in a process that, in totality, is fundamentally unfair. Doe also notes this claim may be impacted by Plaintiff's separate certification of a question to the Supreme Judicial Court on the issue of cross-examination.

---

other. Plaintiff has alleged significant exculpatory evidence, including *Roe's own admissions*, as well as third party evidence, on the one hand, and investigators' pure, ungrounded speculations on the other. Taking Plaintiff's allegations as true, the overwhelming weight of the evidence presented shows that Roe consented.

### III.   **Plaintiff Adequately Pleads a Title IX Claim**

#### A.   **The Controlling Title IX Standard**

Title IX, 20 U.S.C. § 1681(a), "bars the imposition of university discipline where gender is a motivating factor." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). To state a claim under Title IX on an erroneous outcome theory, a plaintiff must allege "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and "a causal connection between the flawed outcome and gender bias." *Ibid*; *See also Doe v. Univ. of Mass.-Amherst,* No. CV 14-30143-MGM, 2015 WL 4306521, at *8 (D. Mass. July 14, 2015) (adopting *Yusuf* standards for assessing Title IX claims). In the context of discrimination claims, a court "cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence." *Cooperman v. Individual Inc.,* 171 F. 3d 43, 48-9 (1st Cir. 1999) (citation omitted). Instead, a Court must decide whether a claim has facial plausibility, specifically, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blank v. Knox Coll.,* No. 14-CV-1386, 2015 WL 328602, at *2 (C.D. Ill. 2015) (internal citations omitted). The court in *Blank* "decline[d] to find that a Title IX plaintiff must present 'particularized facts' substantiating his claim" since the heightened pleading standard only applies to allegations of fraud or mistake. *Id.* at *3.

The First Circuit proclaimed that the "plausibility" standard of *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) must be treated flexibly in cases where the plaintiff alleges discrimination: "[a] paucity of direct evidence is not fatal in the plausibility inquiry. 'Smoking gun' proof of discrimination is rarely available, especially at the pleading stage. Nor is such proof necessary." *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 49

(1st Cir. 2012) (citations omitted) (denying motion to dismiss political discrimination claim, where plaintiff alleged employment action in "temporal proximity" with political regime change).

Furthermore, "*Iqbal* does not require that the inference of discriminatory intent supported by the pleaded facts be *the most plausible* explanation of the defendant's conduct." 831 F.3d at 57. In adopting legal principles from Title VII cases, the Second Circuit has clarified that "[a] complaint under Title IX…is sufficient with respect to the element of discriminatory intent…if it pleads specific facts that support a *minimal plausible inference* of such discrimination." *Id.* at 56. "The role of the court at this stage of the proceedings is not…to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed." *Id.* at 59.  In this case, Plaintiff alleges sufficient facts to set forth a plausible allegation of gender bias.  Defendant's Motion should be denied.

## B.  Plaintiff Sufficiently Demonstrates How an Erroneous Outcome was Reached by a Flawed Proceeding

As courts routinely recognize, "[t]he first element of an erroneous outcome claim—casting articulable doubt on the accuracy of the outcome—is not a significant barrier." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018). Plaintiffs "can satisfy this element in a number of ways including…challenging the overall sufficiency and reliability of the evidence." *Ibid.* Indeed, "this prong has been met often in recent cases where courts analyzed motions to dismiss." *Norris v. Univ. of Colorado, Boulder*, 362 F. Supp. 3d 1001, 1011 (D. Colo. 2019) (collecting cases); *see also Yusuf*, 35 F.3d at 715 ("the pleading burden in this regard is not heavy."). The Sixth Circuit has held that the denial of an opportunity for live cross-examination of the complainant is sufficient, alone, to cast doubt on the outcome of the proceedings. *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018).

Here, Plaintiff Doe alleges: (i) he did not receive the opportunity to confront his accuser or cross-examine witnesses, despite the fact that the investigation came down to credibility; (ii) the Investigators overlooked various signs of clear evidence of Roe's consent to sexual intercourse; (iii) the Investigators discounted a text message from Roe to her friend the morning after her encounter with Doe that stated "it was fine"; (iv) investigators ignored *undisputed* inconsistences in Roe's statements in separate interviews and failed to carry such inconsistencies into a credibility analysis; and (v) BC failed to re-open the investigation to interview Roommate 1, despite his assertion of information that directly bore on the issue of Roe's consent. AC ¶ 178. These allegations are sufficient to meet the first prong of an erroneous outcome claim. *See*, e.g., *Marymount*, 297 F. Supp. 3d at 584 (allegations of procedural irregularities and "inconsistent and incredible statements" by accuser sufficient to meet pleading threshold); *Prasad v. Cornell Univ.,* No. 15-CV-322, 2016 WL 3212079, at *16 (N.D.N.Y. Feb. 24, 2016) ("allegations that the investigators intentionally misconstrued and misrepresented critical exculpatory evidence" sufficient to cast doubt on outcome).

### C.  Plaintiff Sufficiently Pleads BC's Conduct was Motivated by Gender Bias

As explained above, a plaintiff alleging discrimination need not plead direct evidence; it is sufficient if he can set forth circumstances providing a plausible basis to infer bias. *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d at 49-50. Plaintiff does so here.

First, Plaintiff sets forth facts displaying that the overwhelming evidence in the investigation – including Roe's *own admissions*, such as her acknowledgement that she helped Plaintiff remove her shorts and had a conversation with him about contraception moments before they had intercourse – weighs in favor of finding that Roe consented to sexual intercourse.  AC ¶¶ 178-179, 210. Second, Plaintiff sets forth that the investigators, without any rational explanation,

ignored concrete evidence of consent and instead, wildly distorted the record in order to manufacture a guilty finding. *Id.* Third, Plaintiff alleges that the investigators contradictorily found that Roe was intoxicated to the point of incapacitation, yet deemed her vague, inconsistent alleged memories more reliable than Plaintiff's. *Id.* Fourth, Plaintiff alleges that the investigators, after finding Plaintiff not responsible on the charge for which he was Noticed, then decided, *sua sponte*, to conduct an assessment of whether any alternate theory of responsibility was available. *Id.*

In addition to these facts evidencing a clear bias in favor of the female accuser without any reasonable alternative explanation, Plaintiff alleges that BC, as an institution, was under considerable pressure from the federal government to aggressively pursue sexual assault claims at the risk of losing federal funding. AC ¶¶ 19-37, 172-174, 183-184. Plaintiff also alleges a pattern of discriminatory behavior, in that BC has exclusively suspended or expelled *male* students for sexual misconduct claims. AC ¶ 186.[8]

Together, these are precisely the sort of circumstantial elements that suffice to make out a discrimination claim at the pleading phase – particularly in a case like the one at bar, where any direct evidence of gender bias would be exclusively in Defendant's control. *See*, *e.g.*, 831 F.3d at 57 ("[I]t is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault."); *Doe v. Miami Univ.,* 882 F.3d 579, 593 (6th Cir. 2018) (allegations "showing a potential pattern of gender-based decision-making"); *Noakes v. Syracuse Univ.*, 369 F.Supp.3d 397, 416 (N.D.N.Y. 2019) ("[R]easonable inference [can] be drawn that the Investigator, the…Conduct Board, the

---

[8] Defendant asserts that this factor cannot show bias, because the College does not control "what is reported". Def.'s Br. 17. However, Plaintiff does not allege that only male students were reported for sexual misconduct, he alleges that only male students have been punished severely for such violations. That is a critical difference, one which is directly in BC's control.

Appeals Board, and other…officials were motivated to appease OCR by siding with Roe . . . ."); 238 F.Supp.3d at 223 (D. Mass. 2017) (allegations that a university responded to campus pressure to pursue sexual assault cases); *Wells v. Xavier Univ.*, 7 F.Supp.3d 746, 751 (S.D. Ohio 2014) (allegations suggested that university was "reacting against him[ ] as a male" in response to a Department of Education investigation). Defendant's motion to dismiss Count I should be denied.

### IV.   Plaintiff States an Adequate Claim for Estoppel

In Massachusetts, a plaintiff alleging estoppel must demonstrate: (1) a representation intended to induce a course of conduct on the part of the person to whom the representation was made, (2) an act or omission resulting from the representation by the person to whom the representation was made, and (3) detriment to the person as a consequence of the act. *Boutilier v. John Alden Life Ins. Co.,* 2000 WL 1752623, at *9 (D. Mass. Sept. 29, 2000). BC expected or should have expected Doe to accept its offer of admission and ████████████████████, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that BC would not tolerate, and Doe would not suffer, discrimination, and BC would not deny Doe his procedural rights should he be accused of a violation of BC's policies. AC ¶ 294. Doe relied to his detriment on these express and implied promises and representations made by BC, by choosing to attend BC over other schools. AC ¶ 295.

### V.   Plaintiff Adequately Pleads a Claim for Negligence

To plead negligence, a plaintiff must allege (1) duty, (2) breach, and (3) proximate cause of damage or injury. *Acevedo v. Johnson & Johnson*, No. 16-CV-11977-DLC, 2018 WL 4693958, at *4 (D. Mass. Sept. 30, 2018). There is no requirement for physical injury. *Davis v. Prot. One Alarm Monitoring, Inc.,* 456 F. Supp. 2d 243, 249 (D. Mass. 2006).

A duty of care may be found where an entity "voluntarily assume[s]" to undertake a certain task, fails to exercise due care, increasing the risk of harm.  *See Mullins v. Pine Manor Coll.*, 449 N.E.2d 331, 335-336 (1983). Doe alleges that BC, having assumed a duty of care to train and supervise its employees in investigating and adjudicating claims of sexual misconduct, was obligated to do so with due care, and breached that obligation, resulting in the improper findings and wrongful suspension. AC ¶ 299-307. Moreover, such an outcome was a clearly foreseeable result of a botched investigation. *See Foster v. Loft, Inc.*, 526 N.E.2d 1309, 1313 (Mass. App. Ct. 1988) (employer liable where risk of harm by employee was foreseeable); *Doe v. Univ. of the S.*, No. 09-CV-62, 2011 WL 1258104, at *21 (E.D. Tenn. Mar. 31, 2011) ("[A] jury could find that the harm caused by the University's allegedly and arguably haphazard implementation of its own Sexual Assault Policies was foreseeable, especially where…the harm was severe: a wrongful conviction by a disciplinary committee").

Although the First Circuit found in *Doe v. Trustees of Boston Coll.,* 892 F.3d 67, that the College did not owe a duty of care in *carrying out* its Title IX investigation, the Court in that case did not address the issue of training and retention. *Id.* at 93-95. Given the ▮▮▮▮, severe, and lifelong ramifications of a finding of responsibility against Doe, he was entitled to a process conducted by adequately trained and supervised individuals. BC breached that obligation.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests Defendant's Motion to Dismiss should be denied in its entirety. To the extent that this court may be inclined to dismiss any claim, such dismissal should be without prejudice and with leave to amend. *See* Fed. R. Civ. P. 15. [9]

---

[9] Plaintiff concurs with Defendant's argument that this Court should retain supplemental jurisdiction in the event the Title IX claim is dismissed.

**Dated: January 7, 2020**
**Boston, Massachusetts**

**Respectfully submitted,**

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff John Doe*

**By: */s/ Regina M. Federico***
**Andrew T. Miltenberg, Esq. *(pro hac vice)***
**Stuart Bernstein, Esq. *(pro hac vice)***
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**
**sbernstein@nmllplaw.com**

**Tara J. Davis, Esq. (BBO #675346)**
**Regina M. Federico, Esq. (BBO #700099)**
**101 Federal Street, Nineteenth Floor**
**Boston, Massachusetts 02110**
**(617) 209-2188**
**tdavis@nmllplaw.com**
**rfederico@nmllplaw.com**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Plaintiff, through his undersigned counsel, conferred with counsel for the Defendant concerning the content of the motion, however, the Parties were unable to reach an agreement.

*/s/ Regina M. Federico*
Regina M. Federico

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 7, 2020.

/s/ Regina M. Federico
Regina M. Federico