UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN DOE,  )  <br>         )  <br>    Plaintiff,  )  <br>         )  <br>         )  <br> v.      )  <br>         )  <br> TRUSTEES OF BOSTON COLLEGE, )  <br>         )  <br>    Defendant. )  <br>         )  | Civil Action <br> No. 19-11626-DPW |

BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

HEARING

February 3, 2020

John J. Moakley United States Courthouse
Courtroom No. 1
One Courthouse Way
Boston, Massachusetts  02210

Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

```
 1   APPEARANCES:

 2   Counsel on behalf of Plaintiff:
     Stuart Bernstein
 3   Regina Federico
     Nesenoff & Miltenberg LLP
 4   363 Seventh Avenue
     Fifth Floor
 5   New York, NY 10001
     212-736-4500
 6   sbernstein@nmllplaw.com
     tdavis@nmllplaw.com
 7

 8   Counsel on behalf of Defendant:
     Daryl J. Lapp
 9   Elizabeth H. Kelly
     Locke Lord LLP
10   111 Huntington Avenue
     Boston, MA 02199
11   617-239-0174
     daryl.lapp@lockelord.com
12   liz.kelly@lockelord.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

(The following proceedings were held before the Honorable Douglas P. Woodlock, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, One Courthouse Way, Courtroom 1, Boston, Massachusetts, on January 8, 2020.)

(Case called to order.)

THE COURT: So I apologize first for not seeing you immediately. As you can see, I've just put a case to the jury that was not scheduled quite the way perhaps it should have been.

My general view, I'll tell you, is that the defendant says that it's necessary to move forward on the motion for summary judgment I think before the certification issue I think in part because the question of whether or not the questions will be determinative remains open until we've gone through the summary judgment process.

I will defer to that in light of the fact that the summary judgment and the certification process is likely to take some significant amount of time, significant enough so that the one-year -- which I understand to be the case, the one-year suspension will have been completed probably before certification anyway can be resolved based on my previous experience with it. And of course I understand that the defendant doesn't think that it's appropriate for me to be

1    seeking certification at this time, but we'll take that up when
2    it comes to it.
3            So then I go to the question of the discovery
4    schedule, and I want to be sure that I know what's really in
5    dispute here.  There are a series of witnesses, and my quick
6    run-through of them is that you all agree upon all of these
7    witnesses.  The one you don't agree upon is Jocelyn Fisher
8    Gates.  Is that right?
9            MR. LAPP:  That's right.
10           THE COURT:  So, Ms. Gates, what does she do here?
11           MR. BERNSTEIN:  Your Honor, Ms. Gates is the initial
12   individual who the complainant spoke with, and I can envision
13   it being a limited one, and then that individual met with other
14   B.C. personnel before the complaint was ever filed.  So what
15   Ms. Gates said to other B.C. officials is what we need to find
16   out.  And again --
17           THE COURT:  Why?  Why do you need to find that out?
18           MR. BERNSTEIN:  Because it's very important in the
19   scope of this case what, if anything, she told -- again, this
20   happened before the complaint was filed.  She took the
21   complainant to other B.C. officials and was involved with
22   relaying the story.  And what her role and what she did
23   thereafter we don't know.  And what we do know, she was
24   involved.
25           THE COURT:  Well, I guess the way we deal with that is

1  to deal with the witnesses who are identified.  Someone who
2  kind of does intake or acts as the supporter of someone who
3  makes a complaint, I'm not going to permit discovery with
4  respect to that unless it influenced the determinations
5  themselves.  You haven't shown me that it did.  She's someone
6  that they have who apparently receives complaints and provides
7  support for someone who wants to pursue them.
8          MR. BERNSTEIN:  Your Honor, I don't believe she's an
9  intake individual.  That's not her role.
10          THE COURT:  You don't have enough now to tell me that
11  I'm going to permit it.  There are very sensitive issues that
12  are involved in this that I want to take step by step.  I'm
13  going to let you have the witnesses that you both identified.
14  I'm not going to expand the discovery beyond that unless I'm
15  shown with some particularity how that impacted the actual
16  determination that's made here by the investigators.  I haven't
17  been shown that.
18          MS. FEDERICO:  Your Honor, I have a brief question on
19  the remaining witnesses on the list.  While we have not
20  addressed them and Your Honor has indicated that the
21  agreed-upon witnesses will be permitted for discovery, the
22  remaining ones, we seek to obtain information from them because
23  we believe that the members of the Office of Student Conduct at
24  B.C. as well as potentially other B.C. employees would
25  potentially be in possession of the statistical and historical

1  to deal with the witnesses who are identified.  Someone who
2  kind of does intake or acts as the supporter of someone who
3  makes a complaint, I'm not going to permit discovery with
4  respect to that unless it influenced the determinations
5  themselves.  You haven't shown me that it did.  She's someone
6  that they have who apparently receives complaints and provides
7  support for someone who wants to pursue them.
8          MR. BERNSTEIN:  Your Honor, I don't believe she's an
9  intake individual.  That's not her role.
10          THE COURT:  You don't have enough now to tell me that
11  I'm going to permit it.  There are very sensitive issues that
12  are involved in this that I want to take step by step.  I'm
13  going to let you have the witnesses that you both identified.
14  I'm not going to expand the discovery beyond that unless I'm
15  shown with some particularity how that impacted the actual
16  determination that's made here by the investigators.  I haven't
17  been shown that.
18          MS. FEDERICO:  Your Honor, I have a brief question on
19  the remaining witnesses on the list.  While we have not
20  addressed them and Your Honor has indicated that the
21  agreed-upon witnesses will be permitted for discovery, the
22  remaining ones, we seek to obtain information from them because
23  we believe that the members of the Office of Student Conduct at
24  B.C. as well as potentially other B.C. employees would
25  potentially be in possession of the statistical and historical

1  information that we seek.

2          THE COURT:  But that's not Ms. Gates.  What I asked
3  for is an identification of who the witnesses would be, and I
4  got something that seems to overlap.  These are witnesses, I
5  assume, for purposes of deposition, okay?  You have an
6  additional one, the deposition of whom seems to me to be
7  improvident on the basis of what I know now, but I have only
8  that she received the complaint and encouraged the plaintiff to
9  a subsequent meeting about the complaint.  That's it.  That's
10 not enough.

11         We've got to have proportion here.  And one of the
12 concerns that I have is that inquiry will be made beyond the
13 scope of something that has to do with the nature of the
14 proceedings themselves or distortions of the proceedings.  So
15 right now you have those witnesses for purposes of deposition.

16         Now, the plaintiff asked for supplementation.  I'm not
17 sure that I -- this request for information, I assume that's by
18 interrogatory or some other way like that that doesn't involve
19 depositions but perhaps document production as well, and I
20 don't know what the difference is between the parties.  I can't
21 delineate the difference.  So maybe you can tell me what it is
22 that they're not going to give you that you want.  I'm talking
23 about the defendant's A, B, C -- well, A and B, and then D is
24 written discovery.  But what is it that you want that isn't
25 covered by the proffer that the defendant makes?

```
 1            MS. FEDERICO:  Your Honor, we would like to see
 2   information regarding their training.  We would like to see who
 3   their trainers are, how often these trainings occurred, and we
 4   would like to determine who conducted it and what materials
 5   were used.
 6            THE COURT:  Okay.  So you can have an interrogatory
 7   that does that addressed to B.C., interrogatory.
 8            MS. FEDERICO:  Interrogatory.
 9            THE COURT:  So get those interrogatories.
10            MS. FEDERICO:  Okay.
11            THE COURT:  What else?
12            MS. FEDERICO:  As far as additional information, we
13   would like information regarding the historical data which is
14   not outlined in defendant's plan, per se.  We would like
15   information on --
16            THE COURT:  Statistical information concerning the
17   adjudication of sexual assault complaints at B.C. from 2011 to
18   the present, that historical data?
19            MS. FEDERICO:  Yes, Your Honor.  We're concerned about
20   other additional data that may not --
21            THE COURT:  What?  I mean, at this point, what?  You
22   know, I realize that there's always this interest in spreading
23   a wide net.  But I have an obligation to make the discovery
24   proportional to the case, and this is not wide open unless it's
25   justified in some fashion.  And I don't know how it's
```

```
 1   justified.
 2            MS. FEDERICO:  Understandable, Your Honor.  I defer.
 3            MR. BERNSTEIN:  Your Honor, we have to try to prove
 4   bias.
 5            THE COURT:  I understand that.
 6            MR. BERNSTEIN:  And they are the only ones that have
 7   the documents.
 8            THE COURT:  Listen, you've got to show me how those
 9   documents are going to show bias.  That's what you have to do.
10   Not just say, "We hope it does," not just say, "We won't know
11   until we look at them."  You've got to show me in some fashion
12   how this is going to show bias.
13            What I have here is, you know, what's the classic in
14   statistical information on these kinds of matters, that is,
15   adjudication information presumably by gender and total
16   numbers, but the rest of it, I don't know what you're talking
17   about.
18            MR. BERNSTEIN:  Judge, if you have one investigator
19   who has found responsibility in every case and you have other
20   investigators that haven't, that shows bias.  We don't have
21   those documents.
22            THE COURT:  No, it doesn't show bias.
23            MR. BERNSTEIN:  It does.
24            THE COURT:  You want discovery or not?  Meaningful
25   discovery.  The problem that we're facing and I face throughout
```

1  here is a lack of focus on the part of the plaintiff.  I've
2  tried to narrow this case as best I can to get to the real
3  issues in the case and not get lost in the weeds.  You're
4  getting lost in the weeds.
5       So what I'm going to do is say, "You want any of this
6  stuff, file an interrogatory."  I'll entertain objections to
7  the interrogatories, but now you've got to come forward with
8  specificity about it, and you're going to have to justify it if
9  they make an objection to the interrogatories, and we'll have a
10 long interrogatory practice.
11      I would suggest that you spend your time with things
12 that are important rather than things that are unimportant, but
13 I don't rest assured that that will happen.  And in any event,
14 in order to get to it, I need to have specific sorts of things.
15      MR. BERNSTEIN:  Now, Judge, you talked about
16 interrogatories in terms of training.  Are you directing us
17 that we can't document-demand for their training manuals?
18      THE COURT:  Sure.  You can make document -- all this
19 written discovery you can make, but you're going to spend your
20 time with a great deal of document discovery motion practice.
21 And let me suggest that you use your time and resources wisely,
22 but you don't get them as witnesses.  I still don't understand
23 what you're talking about.  Your interrogatories better be
24 clear enough and document demands be clear enough to make that
25 out if you're faced with objections from the defendants.

|  |  |
|---|---|
| 1 | MR. BERNSTEIN:  Judge, just going back very briefly to |
| 2 | Ms. Gates, like, one of the documents we would like is any |
| 3 | emails, any correspondence she had. |
| 4 | THE COURT:  Make a demand for it. |
| 5 | MR. BERNSTEIN:  Okay. |
| 6 | THE COURT:  Make a demand for it.  I don't know what |
| 7 | it means in this context.  They will presumably respond as they |
| 8 | think they should respond.  I have no reason to believe that |
| 9 | the response will be particularly hospitable, and the lack of |
| 04:19  10 | hospitality is something that of course I'll take into |
| 11 | consideration. |
| 12 | MR. BERNSTEIN:  Your Honor, can I just, is it possible |
| 13 | we could go off the record for one minute or two minutes to |
| 14 | address something? |
| 15 | THE COURT:  Off the record for what? |
| 16 | MR. BERNSTEIN:  I want to address something with the |
| 17 | court that I think it's very -- that my client has asked me |
| 18 | very much to -- |
| 19 | THE COURT:  This is ex parte or off the record? |
| 04:19  20 | MR. BERNSTEIN:  No, no.  Off the record, with Mr. Lapp |
| 21 | here. |
| 22 | THE COURT:  Okay.  Well, there's nobody in the |
| 23 | courtroom who is interested, I don't think.  There are two |
| 24 | people here who are French speakers.  I don't see that as a |
| 25 | problem.  And I'd prefer not to have to force them out.  But if |

```
 1  that's what you say -- I'm sorry, ma'am, I don't know your
 2  affiliation here.
 3          PERSON IN GALLERY:  I'm a B.C. student.
 4          THE COURT:  A B.C. student, okay.  I will ask the
 5  Herrenschmidts and the student to leave just because there's
 6  been a request, and apparently something of a confidential
 7  nature is going to be offered.  If it isn't and if I don't
 8  think that it should be, then when we reconvene I'll explain
 9  what's going on.  But Mr. Herrenschmidt, if you and
10  Mrs. Herrenschmidt can leave the courtroom for a short period
11  of time.
12          (Courtroom closed.)
13          * * * SEALED DISCUSSION REMOVED FROM TRANSCRIPT * * *
14          (Courtroom reopened.)
15          THE COURT:  I'm not sure, Mr. Herrenschmidt, if you'll
16  be able to translate this adequately for Ms. Herrenschmidt, but
17  as I indicated, I closed the courtroom because there was an
18  anticipated discussion of matters that would otherwise be
19  confidential in this setting.  And when that happens, I think
20  it's my obligation to close the courtroom.
21          There were matters that were discussed that were
22  confidential that really had to do with the nature and premises
23  of certain kinds of discovery in the case.  And this is for the
24  benefit of the student as well who was excluded from the
25  courtroom.  But what has happened is that, after discussing
```

1  these matters which were interrelated with the discovery
2  process, I established a fact discovery, that is discovery
3  process conclusion on May 30 -- excuse me, May 13 of 2020, and
4  I established a date for the filing of motions for summary
5  judgment on June 10 so that we can address promptly the
6  question of summary judgment which the defendant has indicated
7  that it will be pursuing in whole.
8       The further effect of that is that I am not going to
9  be addressing the question of certification until we resolve
04:41 10  the question of summary judgment because a premise of
11  certification is that the questions that are being propounded
12  to the Supreme Judicial Court are dispositive, and the
13  defendant has proffered that their summary judgment motion will
14  dispose of the case separately.
15       And so rather than imposing further costs on this
16  litigation through certification at this time and any ancillary
17  litigation, I'm choosing to set the schedule for discovery like
18  that.  And that's what the outcome of the discussion was, but I
19  felt obligated to close the courtroom because certain
04:42 20  confidential matters related to potential discovery were
21  discussed here.
22       Have I fairly stated it from the parties' point of
23  view, the substance --
24       MR. BERNSTEIN:  Yes, Your Honor.
25       MR. LAPP:  Yes.

Case 1:19-cv-11626-DPW   Document 85   Filed 02/25/20   Page 13 of 14

13

```
 1            THE COURT:  All right.  We will be in recess here.
 2   Perhaps if I can chat with Mr. and Mrs. Herrenschmidt who are I
 3   think blissfully ignorant, unaware of this case and its
 4   implications, then that's what I'll do.  We will be in recess.
 5            (Adjourned, 4:42 p.m.)
```

```
 1                CERTIFICATE OF OFFICIAL REPORTER
 2
 3            I, Kelly Mortellite, Registered Merit Reporter
 4   and Certified Realtime Reporter, in and for the United States
 5   District Court for the District of Massachusetts, do hereby
 6   certify that the foregoing transcript is a true and correct
 7   transcript of the stenographically reported proceedings held in
 8   the above-entitled matter to the best of my skill and ability.
 9                  Dated this 21st day of February, 2019.
10
11                  /s/ Kelly Mortellite
12                  _____
13                  Kelly Mortellite, RMR, CRR
14                  Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```